UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

**JAMES BRIAN WINNERT,**

                                 **Plaintiff,**                       18-CV-771Sr

**v.**

**COMMISSIONER OF SOCIAL SECURITY,**

                                 **Defendant.**

---

## DECISION AND ORDER

As set forth In the Standing Order of the Court regarding Social Security Cases subject to the May 21, 2018 Memorandum of Understanding, the parties have consented to the assignment of this case to the undersigned to conduct all proceedings in this case, including the entry of final judgment, as set forth in 42 U.S.C. § 405(g). Dkt. #14.

## BACKGROUND

Plaintiff applied for disability insurance benefits and supplemental security income ("SSI"), benefits with the Social Security Administration ("SSA"), on July 30, 2009, alleging disability beginning December 1, 2007, at the age of 38, due to anxiety, depression, bipolar disorder, panic disorder and phobias. Dkt. #6, p.216.

Administrative Law Judge ("ALJ"), Stanley Moskal, Jr. determined that plaintiff was not disabled by decision dated August 26, 2011. Dkt. #6, pp.95-105.

Specifically, ALJ Moskal determined that if plaintiff stopped his use of substances, he would be capable of simple work in a low contact, low stress setting. Dkt. #6, p.102. On April 9, 2013, the Appeals Council remanded plaintiff's case back to the ALJ to explain the weight assigned to the opinions of treating psychiatrist Balvinder S. Kang, M.D., consultative psychological examiner Renee Baskin, Ph.D., and state agency consultant M. Totin, Psy.D.; to quantify the ALJ's restriction to low contact and low stress work; and to provide an adequate rationale for his finding that plaintiff could perform his past relevant work as a plumber. Dkt. #6, pp.110-113.

On September 10, 2013, ALJ Moskal found plaintiff not disabled. Dkt. #6, pp.15-34. Specifically, ALJ Moskal determined that if plaintiff stopped his use of substances, he would only have a mild limitation in social functioning and an occasional limitation in his ability to, *inter alia*, perform activities within a schedule, maintain regular attendance, sustain an ordinary routine without special supervision, work in coordination with or proximity to others without being distracted by them, complete a normal workday and workweek without interruptions from psychologically based symptoms and interact appropriately with the general public. Dkt. #6, p.32. The Appeals Council denied review on March 25, 2015, however, on January 12, 2016, the Commissioner stipulated before the district court that the case should be remanded for further proceedings. Dkt. #6, pp.607 & 654-655 & 15-CV-458 at Dkt. #11. The Appeals Council remanded the matter to an ALJ for further consideration of the materiality of plaintiff's substance abuse and for supplemental evidence from a vocational expert regarding the mental and physical demands of plaintiff's past relevant work. Dkt. #6, pp.658-660.

On January 25, 2018, plaintiff appeared with counsel and testified, along with an impartial vocational expert ("VE"), Jay Steinbrenner, at an administrative hearing before ALJ Timothy McGuan. Dkt. #6, pp.540-581. Plaintiff testified that he was a journeyman plumber working for his father's company and then in his own business, but no longer has his license. Dkt. #6, p.574. He experiences no joy in doing anything. Dkt. #6, p.546. While he can go to a party with his family, he gets real paranoid in crowds. Dkt. #6, p.546. Plaintiff testified that he can't sleep more than a couple of hours a day for multiple days at a time due to his bipolar disorder, which aggravates his anxiety. Dkt. #6, pp.546-547. He won't go outside to check his mail until midnight and runs back into the house if a car turns down the road. Dkt. #6, pp.547-548. He keeps his shade drawn because he feels as though people are watching him. Dkt. #6, p.548. When he is feeling good, he will sometimes plan to attend an event, but when the time comes, he can't go because he gets too freaked out. Dkt. #6, pp.548-549. He did not think he could deal with a customer and doubted his ability to complete an interview. Dkt. #6, pp.559-560. He can occasionally go to the grocery store if he is with his mother or trusted friend. Dkt. #6, pp.560-561. He also testified that he has irritable bowel syndrome which requires him to use the bathroom 10 times a day. Dkt. #6, p.559. Plaintiff testified that he spent three summers in rehab and has not used crack cocaine since 2008 or 2009, just after his father died. Dkt. #6, pp.563-564. He does occasionally smoke a small amount of marijuana to take the edge off, explaining that if he smokes more than that it increases his anxiety and paranoia. Dkt. #6, pp.564-565. He drinks alcohol once or twice a week, but denied becoming intoxicated. Dkt. #6, pp. 565-566.

The VE was asked to assume an individual with the residual functional capacity ("RFC"), to perform at any exertional level, but could only perform simple, unskilled work which required no more than occasional interaction with the public and frequent interaction with supervisors and co-workers. Dkt. #6, p.575. The VE testified that plaintiff would not be able to work as a plumber, but would be able to work as a warehouse worker or packaging machine operator, each of which were medium unskilled jobs. Dkt. #6, p.575-576. When asked to include limitations regarding working pace and maintenance of a schedule, the VE testified that more than 15% off task per day or more than two absences per month would be work preclusive. Dkt. #6, pp. 577-578.

The ALJ rendered a decision that plaintiff was not disabled on March 20, 2018. Dkt. #6, pp.515-531. Plaintiff commenced this action seeking review of the Commissioner's final decision on July 13, 2018. Dkt. #1.

**DISCUSSION AND ANALYSIS**

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 496, 501 (2d Cir. 2009). If the evidence is susceptible to more than one rational interpretation, the Commissioner's determination must be upheld. *McIntyre v.*

*Colvin*, 758 F.3d 146, 149 (2d Cir. 2014). "Where an administrative decision rests on adequate findings sustained by evidence having rational probative force, the court should not substitute its judgment for that of the Commissioner." *Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998).

To be disabled under the Social Security Act ("Act"), a claimant must establish an inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 20 C.F.R. § 404.1505(a). The Commissioner must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. § 404.1520(a). At step one, the claimant must demonstrate that he is not engaging in substantial gainful activity. 20 C.F.R. § 404.1520(b). At step two, the claimant must demonstrate that he has a severe impairment or combination of impairments that limits the claimant's ability to perform physical or mental work-related activities. 20 C.F.R. § 404.1520(c). If the impairment meets or medically equals the criteria of a disabling impairment as set forth in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"), and satisfies the durational requirement, the claimant is entitled to disability benefits. 20 C.F.R. § 404.1520(d). If the impairment does not meet the criteria of a disabling impairment, the Commissioner considers whether the claimant has sufficient RFC for the claimant to return to past relevant work. 20 C.F.R. § 404.1520(e)-(f). If the claimant is unable to return to past relevant work, the burden of proof shifts to the Commissioner to demonstrate that the claimant could perform other jobs which

exist in significant numbers in the national economy, based on claimant's age, education and work experience. 20 C.F.R. § 404.1520(g).

In the instant case, the ALJ made the following findings with regard to the five-step sequential evaluation: (1) plaintiff had not engaged in substantial gainful activity since the alleged onset date of December 1, 2007; (2) plaintiff's social anxiety, agoraphobia, bipolar disorder, major depressive disorder, generalized anxiety disorder and substance abuse disorder constitute severe impairments; (3) plaintiff's impairments did not meet or equal any listed impairment; (4) plaintiff retained the residual functional capacity to perform simple unskilled work at all exertional levels with only occasional interaction with the public and frequent interaction with coworkers and supervisors; and (5) plaintiff was not capable of performing his past work as a plumber but could work as a warehouse worker or packing machine operator, each of which were unskilled jobs requiring medium exertion. Dkt. #6, pp. 520-531.

Plaintiff argues that the ALJ erred in failing to afford controlling weight to the August 25, 2010 opinion of plaintiff's treating psychiatrist, Dr. Balvinder Kang, which determined that plaintiff had multiple marked limitations which would warrant a finding of disability. Dkt. #8-1, pp.11-14. Plaintiff also argues that the ALJ's RFC failed to account for plaintiff limitations with respect to stress. Dkt. #8-1, pp.15-16.

The Commissioner responds that the ALJ properly weighed Dr. Kang's 2010 opinion, giving it little weight because it was an early opinion and was

inconsistent with the objective mental status exams and his own treatment notes. Dkt. #11-1, p.20. The Commissioner also notes that Dr. Kang's 2010 opinion was not consistent with the observations of other medical providers and inconsistent with plaintiff's activities of daily living, including part time work. Dkt. #11-1, pp.22-24. The Commissioner further responds that the ALJ's RFC included the functions and limitations supported by the record, including stress limitations. Dkt. #11-1, pp.26-29. More specifically, the Commissioner responds that it was sufficient to limit plaintiff to occasional interaction with the public and to simple, unskilled work. Dkt. #11-1, p.27.

The opinion of a plaintiff's treating physician as to the nature and severity of an impairment is entitled to controlling weight so long as it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. *Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019). The treating physician rule recognizes that a physician who has a long history with a patient is better positioned to evaluate the patient's disability than a doctor who observes the patient once for the purposes of a disability hearing. *Schisler v. Sullivan*, 3 F.3d 563, 568 (2d Cir. 1993). The treating physician rule is even more relevant in the context of mental impairments, which by their nature are best diagnosed over time. *Santiago v. Barnhart*, 441 F. Supp.2d 620, 629 (S.D.N.Y. 2006).

If the ALJ determines that the opinion of a treating physician is not entitled to controlling weight, the ALJ must consider the following non-exclusive factors in assessing the appropriate weight to afford such opinion: (1) the frequency, length,

nature and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist. *Estrella*, 925 F.3d at 95. The ALJ is required to set forth good reasons for the weight it gives such opinion. *Id.* The ALJ is not permitted to cherry pick from the treatment record evidence that is inconsistent with the treating source's opinion in order to conclude that such opinion should be accorded less weight nor is he permitted to substitute his own lay opinion for that of a medical source. *Quinto v. Berryhill*, No. 3:17-cv-24, 2017 WL 6017931, at *14 (D. Ct. Dec. 1, 2017).

On August 25, 2010, Dr. Kang completed a Medical Statement concerning Bipolar Disorder and related conditions for Social Security Disability Claim. Dkt. #434. Dr. Kang opined that plaintiff suffered from panic attacks and that his mental illness caused moderate limitations in his activities of daily living and ability to maintain social functioning. Dkt. 36, pp.434-438. He also noted that plaintiff experienced deficiencies of concentration, persistence or pace resulting in frequent failure to complete tasks in a timely manner and repeated episodes of deterioration or decompensation in work or work-like settings which cause him to withdraw from the situation or experience exacerbation of signs and symptoms. Dkt. #6, pp.435-436. Dr. Kang opined that plaintiff was markedly impaired in his ability to:

- perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances;

- sustain an ordinary routine without special supervision;

- work in coordination with and proximity with others without being distracted by them; and

- complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods.

Dkt. #6, pp.436-437. Dr. Kang opined that plaintiff was moderately impaired in his ability to:

- understand and remember detailed instructions;

- carry out very short and simple instructions;

- carry out detailed instructions;

- maintain attention and concentration for extended periods;

- make simple work-related decisions;

- interact appropriately with the general public;

- accept instructions and respond appropriately to criticism from supervisors;

- get along with coworkers or peers without distracting them or exhibiting behavioral extremes;

- respond appropriately to changes in the work setting; and

- set realistic goals or make plans independently of others.

Dkt. #6, pp.436-437.

The ALJ determined that Dr. Kang's "early opinion" was entitled to little weight because of its inconsistency with the objective mental status exams before and

after the opinion and GAF score opinions made by Dr. Kang and other treating sources that are inconsistent with the degree of impairment alleged in the opinion. Dkt. #6, pp.522-523 & 526.

Dr. Kang is a psychiatrist who provided medication management to plaintiff during 45 visits between September 4, 2008 and February 2, 2015. At the time of his medical source statement, Dr, Kang had examined plaintiff more than 20 times over the course of almost two years. Contrary to the ALJ's determination that Dr. Kang's opinion is inconsistent with objective mental status exams, the treatment notes within the record - from Dr. Kang and subsequent treating sources, including psychiatrist Andrew Reichert, M.D., Clinical Psychologist Paul Fazekas, Ph.D., and general practitioner Jennifer Yerke-McNamara, M.D. - consistently reflect significant symptoms of mental impairment and side effects of psychotropic medication. Although psychotropic medication, consisting of varying combinations of Depakote, Seroquel, Zyprexa, Latuda, Geodon, Klonopin, Ativan, Cymbalta and Trazadone, generally rendered plaintiff psychiatrically stable, he continuously struggled with leaving his home and interacting with others. Dkt. #6, pp.296, 299, 302, 304, 306, 452, 483 & 484. Thus, even when plaintiff's GAF[1] is estimated at 57, in early 2008, it was notable that plaintiff

---

[1] Global Assessment of Functioning ("GAF") scores measure how much a person's psychological symptoms impact their daily life. A score of between 51 and 60 genenerally indicates moderate symptoms, such as occasional panic attacks, or some difficulty in building meaningful social relationships. *Zabala v. Astrue*, 595 F.3d 402, 406 n.3 (2d Cir. 2010). The utility of the GAF metric is debatable, given that there is no way to standardize measurement, and it has been removed from the fifth edition of the Diagnostic and Statistical Manual of Mental Disorders. The SSA has instructed ALJ's to treat GAF scores as opinion evidence and focus on the details of the treating provider's description of symptoms rather than the number assigned. *See Estrella v. Berryhill*, 925 F.3d 90, 97 (2d Cir. 2019). Plaintiff's GAF was reported as 49, 55,

was able to meet his father at a location he had never been before or that he went shopping with friends during regular hours. Dkt. #6, pp.299 & 303. Similarly, after several notations in 2017 that plaintiff was psychiatrically stable and doing well on current medication, it was notable that plaintiff "actually went to an outdoor function for several hours a few days ago." Dkt. #6, p.891. In addition, despite recognition of improvement in plaintiff's psychiatric symptoms, treating providers frequently note complaints of Irritable Bowel Syndrome with diarrhea (which plaintiff's primary care provider suggested was linked to his anxiety), insomnia, racing thoughts, panic type attacks and paranoia. Dkt. #6, pp. 306, 316, 322, 483, 484, 452, 793, 815, 816, 830, 849, 861, 881, 882, 883, 885, 887, 891, 893, 895, 899. While there are references to plaintiff working as a plumber, it is clear that such activity was limited. Dkt. #6, pp. 296, 299, 878, 887, 895, 896, 899. Substantial evidence supports Dr. Kang's opinion of plaintiff's functional limitations and it is entitled to controlling weight. *See, e.g., Nasca v. Colvin*, 216 F. Supp.3d 291, 298 (W.D.N.Y. 2016).

To the extent that the ALJ was concerned that Dr. Kang's 2010 opinion was rendered "early," and was stale by the time of the ALJ's 2018 decision, it was the duty of the ALJ to develop the record by obtaining updated medical source statements offering a longitudinal assessment of plaintiff's condition. *See Knepple-Hodyno v. Astrue*, No. 11-cv-443, 2012 WL 3930442, at *8 (E.D.N.Y. Sept. 10, 2012) (if ALJ determined that treating physician's opinion was stale, ALJ should have requested

---

57 and as high as 75 between September 4, 2014 and February 2, 2015, before dropping to 50-60 in December of 2015. Dkt. #6, pp. 297, 300, 302, 305, 307, 434, 812, 813, 871.

updated assessment from that treating physician, as well as any other relevant treating physician, as part of ALJ's duty to develop the record). The Court notes that the only other opinion evidence before the Court, *to wit*, consultative psychological examiner Renee Baskin, Ph.D.'s examination of plaintiff on October 9, 2009[2] and state agency

---

[2] On October 9, 2009, Consultative Psychological Examiner Renee Baskin, Ph.D., observed that plaintiff was tense and restless and that he was fussing and picking at his fingers and hands during the entire evaluation. Dkt. #6, p.346. His attention and concentration were observed to be mildly impaired due to anxiety and nervousness in the evaluation. Dkt. #6, p.346. His recent and remote memory skills were observed to be mildly impaired. Dkt. #6, p.346. His insight was limited, with fair to poor judgment. Dkt. #6, p.346. His affect was markedly anxious and tense. Dkt. #6, p.346. He appeared to be a very poor historian and somewhat evasive and resistant, particularly with respect to his drug and alcohol history, causing Dr. Baskin to opine that "[i]t is entirely possible that he is minimizing current use." Dkt. #6, p.345. Dr. Baskin diagnosed plaintiff with polysubstance dependence and generalized anxiety disorder, opining that plaintiff

> would have minimal to no limitations in his ability to follow and understand simple directions and instructions, perform simple tasks independently, maintain attention and concentration, maintain a regular schedule, learn new tasks with supervision. He would have moderate limitations being able to make appropriate decisions, relate adequately with others and appropriately deal with stress.
>
> The results of the present evaluation appear to be consistent with substance abuse and psychiatric problems and this may interfere to some degree with the claimant's ability to function on a daily basis.

Dkt. #6, p.347. Dr. Baskin determined that plaintiff would not be able to manage his own funds due to history of substance abuse and probable current continued use. Dkt. #6, p.347.

Although there are notes in the treatment record of substance use in 2008 and 2009 (Dkt. #6, pp. 295, 298, 301 & 345), and alcohol use in 2008, 2009 and 2012 (Dkt. #6, p.293, 345 & 485), with testimony from plaintiff that he attended outpatient rehab in 2008, 2009 & 2010 (Dkt. #6, p.48 & 563), there is no suggestion from any treating source that plaintiff's use of substances materially affected his RFC.

ALJ Mc Guan determined that plaintiff's substance abuse is not material because even when he was abusing alcohol and illicit drugs, his RFC is not disabling. Dkt. #6, p.529.

medical consultant M. Totin, Psy.D.'s review of plaintiff's medical records on November 25, 2009,[3] predate Dr. Kang's August 25, 2010 medical source statement.

"Where the existing record contains persuasive proof of disability and a remand for further evidentiary proceedings would serve no further purpose, a remand for calculation of benefits is appropriate." *White v. Comm'r*, 302 F. Supp.2d 170, 174 (W.D.N.Y. 2004), *quoting Martinez v. Comm'r*, 262 F. Supp.2d 40, 49 (W.D.N.Y. 2003). Such a determination is particularly appropriate where, as here, the matter has already been remanded and the ALJ failed to address the issues identified for reconsideration, *to wit*, the weight to be assigned to the medical source opinions and further explanation of the plaintiff's ability to interact with others and perform low stress work. *Karr v. Berryhill*, 2018 WL 6444124, at *5 (W.D.N.Y. Dec. 10, 2018). Moreover, it is appropriate to recognize delay as a factor militating against a remand for further proceedings where the record contains substantial evidence of disability. *Olejniczak v. Colvin*, 180 F. Supp.3d 224, 230 (W.D.N.Y. 2016). The Court notes that, in *Olejniczak*, the matter had been pending for five years; in the instant case, this matter has been pending more than twice as long.

---

[3] The State Agency Medical Consultant determined that plaintiff would be moderately limited in his ability to understand and remember detailed instructions; carry out detailed instructions; maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; work in coordination with or proximity to others without being distracted by them; complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods; interact appropriately with the general public; accept instructions and respond appropriately to criticism from supervisors; get along with coworkers or peers without distracting them or exhibiting behavioral extremes; maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness; respond appropriately to changes in the work setting; travel in unfamiliar places or use public transportation; and set realistic goals or make plans independently of others. Dkt. #6, pp.367-368.

## CONCLUSION

Based on the foregoing, plaintiff's motion for judgment on the pleadings (Dkt. #8), is granted and the case is remanded for calculation of benefits; and the Commissioner's motion for judgment on the pleadings (Dkt. #11), is denied. The Clerk of the Court is directed to close this case.

**SO ORDERED.**

**DATED:** Buffalo, New York
February 25, 2020

    *s/ H. Kenneth Schroeder, Jr.*
**H. KENNETH SCHROEDER, JR.**
**United States Magistrate Judge**